UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAUL ALAN VELD,

Plaintiff

v.

ANSELMO LINDBERG OLIVER LLC and
PNC BANK, NATIONAL ASSOCIATION,

Defendants.

JURY TRIAL DEMANDED

## COMPLAINT

NOW COMES the Plaintiff, PAUL ALAN VELD ("Plaintiff"), by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendants, ANSELMO LINDBERG OLIVER LLC ("Anselmo") and PNC BANK, NATIONAL ASSOCIATION ("PNC") (collectively "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Anselmo's violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, PNC's violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq., and for PNC's violations of the Bankruptcy Discharge Injunction pursuant to 11 U.S.C. §§524, 105.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants' conduct harmed Plaintiff in this District.

4. The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

## PARTIES

5. Plaintiff, Paul Alan Veld, is a consumer and natural person over 18 years of age who owned real property located at 1031 Country Court, Crete, Illinois 60417 ("subject property").

6. Defendant Anselmo is an Illinois law firm with its principal place of business located at 1771 West Diehl Road, Naperville, Illinois 60563.

7. Defendant PNC is a banking subsidiary of PNC Financial Services Group with its principal place of business in Pittsburgh, Pennsylvania. PNC is a foreign corporation in the business of issuing and servicing loans across the country, including in the State of Illinois.

## BANKRUPTCY CASE

8. On or about July 31, 2003, Plaintiff executed a mortgage and note ("subject loan") in favor of National City Bank secured by the subject property.

9. On or about May 1, 2012, PNC began servicing the subject loan.

10. Plaintiff defaulted on the subject loan in March 2014.

11. On April 30, 2014, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 14-16514 ("bankruptcy"). *See* Exhibit A, a true and correct copy of the Notice of Bankruptcy Case Filing.

12. Schedule D of the bankruptcy petition listed the subject loan, a secured pre-petition debt to PNC, secured by the subject property. *See* Exhibit B, a true and correct copy of Schedule D filed in Plaintiff's bankruptcy case.

13. On May 1, 2014, Plaintiff filed a Chapter 13 Plan which treated PNC's claim(s) as follows:

> "Debtor is surrendering the real property located at 1031 Country Court, Crete, Illinois to PNC Mortgage and PNC Bank, NA in full satisfaction of their claims."

*See* Exhibit C, a true and correct copy of Plaintiff's Chapter 13 Plan.

14. On May 3, 2014, PNC was served with Plaintiff's Chapter 13 Plan by the Bankruptcy Noticing Center ("BNC"). *Id.*

15. Also on May 3, 2014, because PNC was listed as a creditor, the BNC served PNC with Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines. *See* Exhibit D, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing upon PNC.

16. On May 28, 2014, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative from PNC appeared at the 341 Meeting of Creditors.

17. On May 28, 2014, Plaintiff filed a Modified Chapter 13 Plan which treated PNC's claim(s) as follows:

> "Debtor is surrendering the real property located at 1031 Country Court, Crete, Illinois to PNC Mortgage and PNC Bank, NA in full satisfaction of their claims."

*See* Exhibit E, a true and correct copy of Plaintiff's Modified Chapter 13 Plan.

18. On May 30, 2014, PNC was served with Plaintiff's Modified Chapter 13 Plan by the BNC. *Id.*

19. On July 25, 2014, the Honorable Judge Bruce W. Black entered an Order Confirming Plaintiff's Modified Chapter 13 Plan in the bankruptcy case. *See* Exhibit F, a true and correct copy of the Order Confirming Plan.

20. On August 6, 2014, PNC, through its counsel, filed a Motion for Relief from the Automatic Stay and Co-Debtor Stay in Plaintiff's bankruptcy case in order to permit it to pursue its state law remedies against the property. *See* Exhibit G, a true and correct copy of the August 6, 2014 Motion.

21. On August 22, 2014, the Honorable Judge William V. Altenberger entered an Order Granting Motion for Relief from the Automatic Stay and Co-Debtor Stay. *See* Exhibit H, a true and correct copy of the August 22, 2014 Order.

22. Plaintiff fully performed his duties as set forth in his confirmed Chapter 13 Plan.

23. On January 26, 2015, Plaintiff received a discharge of all dischargeable debts, including the subject loan. *See* Exhibit I, a true and correct copy of the Discharge Order along with the BNC Certificate of Notice establishing service upon PNC.

24. The Discharge Order expressly stated:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

25. Pursuant to 11 U.S.C. §524, the entry of the Discharge Order invoked the protections of the discharge injunction, prohibiting any acts to collect upon the subject loan by PNC, Anselmo, or any other party.

### DEFENDANTS' POST-DISCHARGE COLLECTION ACTIVITY

26. On September 4, 2015, PNC, through its attorney, Anselmo, filed a foreclosure proceeding against the subject property.

27. On January 15, 2016, PNC, through Anselmo, obtained a judgment of foreclosure against the subject property.

28. On March 17, 2016, the subject property was sold at foreclosure sale.

29. On April 14, 2016, PNC, through Anselmo, filed a Motion for Order Approving Report of Sale and Distribution and for Order of Possession. In its Motion, PNC sought a personal deficiency judgment against Plaintiff in the amount of $146,573.46. *See* Exhibit J, a true and correct copy of a portion of the April 14, 2016 Motion.

30. The Motion stated "[t]his law firm [Anselmo] is deemed to be a debt collector." *Id.*

31. On April 22, 2016, the Court entered an Order Approving Report of Sale and Distribution ("Order"). *See* Exhibit K, a true and correct copy of the Order.

32. The Order stated:

> "[d]eficiency of $146,573.46 is entered as a *personal* judgment against Paul Alan Veld, DO." *Id.* (emphasis added).

33. On April 29, 2016, after the subject property was sold at the foreclosure sale, PNC sent Plaintiff a notice attempting to induce Plaintiff to obtain insurance on the subject property, while Plaintiff was no longer the record owner of the subject property. *See* Exhibit L, a true and correct copy of the April 29, 2016 notice PNC sent to Plaintiff.

34. The PNC notice stated:

> "[t]his is your second and final notice to obtain insurance.....[y]*ou must reimburse PNC Mortgage for insurance premiums for any period during which the insurance we buy is in effect but you do not have insurance.*" *Id.* (emphasis added).

### DAMAGES

35. As a result of Defendants' conduct, a judgment in the amount of $146,573.46 was entered against Plaintiff.

36. The entry of the six figure judgment against Plaintiff has caused Plaintiff significant emotional distress and mental anguish as he was led to believe that his bankruptcy had no legal effect.

5

37. Plaintiff has been denied the benefits of a fresh start contemplated by the Bankruptcy Code.

38. Concerned about the violations of his rights and protections afforded by virtue of his Chapter 13 bankruptcy discharge, Plaintiff sought the assistance of counsel to ensure that Defendants' unlawful collection efforts ceased.

39. Plaintiff has expended time and expenses consulting with his attorneys as a result of Defendants' deceptive and unlawful collection actions.

### COUNT I – ANSELMO'S VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

40. Plaintiff restates and realleges paragraphs 1 through 39 as though fully set forth herein.

41. The Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

42. The subject loan is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction for personal, family, or household purposes.

43. Anselmo is a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephone to collect delinquent consumer accounts.

44. Anselmo is also a "debt collector" because its collection activities commenced after the subject loan was in default. 15 U.S.C. §1692a(6).

45. Anselmo violated 15 U.S.C. §§1692 e, e(2), e(10), f, and f(1), through its debt collection efforts.

   a. **Violations of FDCPA §1692e**

46. Anselmo violated §1692e by seeking and obtaining a deficiency judgment against Plaintiff in an effort to deceive Plaintiff into believing he was liable for the deficiency that arose after the subject property was sold. Plaintiff's personal liability on the subject loan was

extinguished by virtue of his bankruptcy discharge, and thus Plaintiff was not liable for the deficiency.

47. Anselmo violated §1692e(2) by falsely representing that Plaintiff was liable for the deficiency that arose after the subject property was sold. Plaintiff was not liable for the deficiency by virtue of his bankruptcy discharge.

48. Anselmo violated §1692e(10) by employing false representations and deceptive means in an attempt to collect a discharged debt. Plaintiff's bankruptcy discharge extinguished Plaintiff's liability on the subject loan, thus precluding any deficiency judgment being entered against him.

### b. Violations of FDCPA §1692f

49. Anselmo violated 15 U.S.C. §1692f by employing unfair and unconscionable means to collect the subject loan by attempting to induce Plaintiff into paying a debt that is not legally owed.

50. Anselmo violated §1692f(1) by attempting to collect a debt not permitted by law as the discharge injunction prohibits any attempt to collect a personal deficiency from Plaintiff.

51. Upon information and belief, Anselmo has no system in place to identify and cease collection of discharged debts.

52. Upon information and belief, Anselmo regularly seeks and obtains deficiency judgments against consumers who have obtained bankruptcy discharges.

WHEREFORE, Plaintiff, PAUL ALAN VELD requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1692k; and

d. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II – PNC'S VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

53. Plaintiff restates and realleges paragraphs 1 through 39 as though fully set forth herein.

54. Plaintiff Paul Alan Veld is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/ (c) and (e) respectively.

55. PNC is engaged in commerce in the State of Illinois with regard to Plaintiff, the subject loan, and the subject property. PNC specializes in lending, servicing, and debt collection, which are activities within the stream of commerce and utilized in their regular course of business.

56. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

**a. Deception and Unfairness**

57. PNC violated 815 ILCS 505/2 by engaging in unfair and deceptive acts or practices by using fraud, deception, and misrepresentations in its attempt to collect the subject loan after Plaintiff's bankruptcy discharge.

58. PNC's demand for payment through the personal deficiency judgment represents the use of false pretenses and deception to attempt to collect the subject loan, which was duly scheduled

and discharged in Plaintiff's bankruptcy, because the subject loan was not owed at the time the personal deficiency judgment was entered against Plaintiff.

59. It was unfair and deceptive for PNC to seek to collect the subject loan from Plaintiff through the personal deficiency judgment and such conduct was designed to induce Plaintiff into making payments on a debt that is uncollectible and not owed as a matter of law.

60. It was also unfair and deceptive for PNC to assert that Plaintiff remained obligated to insure the subject property after the subject property was sold at a foreclosure sale and while Plaintiff was no longer the record owner of the subject property.

61. PNC intended that Plaintiff rely on its unfair and deceptive acts, and Plaintiff did in fact rely on PNC's deceptive and unfair acts to his detriment as he was led to believe that his bankruptcy had no legal effect.

62. PNC's conduct in obtaining a six figure judgment on a debt discharged in bankruptcy is immoral and against public policy.

63. Upon information and belief, attempting to collect debts discharged in bankruptcy from Illinois consumers is an unfair and deceptive business practice willfully employed by PNC and is done on a mass scale.

64. As pled above, Plaintiff was substantially harmed by PNC's conduct.

65. An award of punitive damages is appropriate because PNC's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to PNC's unlawful collection attempt.

WHEREFORE, Plaintiff, PAUL ALAN VELD, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statute;
b. awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;
c. awarding Plaintiff costs and reasonable attorney's fees; and
d. awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III – PNC'S VIOLATIONS OF THE DISCHARGE INJUNCTION

66. Plaintiff restates and realleges paragraphs 1 through 39 as though fully set forth herein.

67. "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007).

68. Pursuant to 11 U.S.C. §524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

69. "Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001).

70. A court has not only the inherent authority to enforce its orders, but also the statutory authority, under 11 U.S.C. §105(a), to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. This authority includes the issuance of sanctions as necessary, and encompasses both the court's authority to enforce orders and, also, necessarily includes orders imposing sanctions for violating the discharge injunction. *In re Adams,* 2010 Bankr. LEXIS 22017, *11 (Bankr. E.D. N.C. 2010).

71. "The automatic stay and discharge injunction are cornerstones of bankruptcy law. They are, respectively, a fundamental debtor protection and a fundamental debtor objective. The automatic stay assists debtors in regaining their financial footing by allowing them to do so free from collection efforts. And, having successfully completed the bankruptcy process, discharge provides debtors with a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. But the automatic stay and discharge injunction must be enforced to provide any meaningful protection or incentive." *In re Curtis*, 322 B.R. 470, 483 (Bankr. D. Mass. 2005).

72. "If the court finds that the creditor received notice of the discharge in bankruptcy, then the debtor will have to prove only that the creditor intended the actions which violated the injunction." *Faust v. Texaco Ref. and Mktg, Inc.*, 270 B.R. 310, 315 (Bankr. M.D. Ga. 1998).

73. In determining if punitive damages are appropriate, the court has looked to (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; (4) any provocation by the debtor; as well as (5) the creditor's sophistication and knowledge of bankruptcy law and procedure. *In re Sumpter*, 171 B.R. 835, 845 (Bankr. N.D. Ill.1994).

74. Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so. *In re Wagner*, 74 B.R. 898, 903-904 (Bankr. E.D. Pa. 1987).

75. Punitive damages may be awarded for violations of the bankruptcy discharge, and are especially appropriate when a party acts in "clear disregard and disrespect of the bankruptcy

laws." *In re Vazquez*, 221 B.R. 222, 231 (Bankr.N.D.Ill.1998). Punitive damages of four to ten times the amount of compensatory damages may be appropriate for willful violations of the bankruptcy injunction. *Id.*

76. Furthermore, "[c]orporations can be liable for punitive damages because of acts of their agents if the corporation authorized the doing and the manner of the act of its agent." *Id*. at 230.

77. Punitive damages are especially appropriate when a party has acted in "arrogant defiance" of the Bankruptcy Code. *In re Medlin*, 201 B.R. 188, 194 (Bankr. E.D. Tenn. 1996).

78. "For violations of the discharge injunction, courts have awarded punitive damages 'where there exists a complete and utter disrespect for the bankruptcy laws.'" *In re Phillips,* 2012 Bankr. LEXIS, *10 (Bankr. N.D. Ohio 2012).

79. "In assessing punitive damages it has been reasoned that 'sophisticated commercial enterprises have a clear obligation to adjust their programming and procedures and their instruction to employees to handle complex matters correctly.'" *In re Wallace,* 2011 Bankr. LEXIS 1168, *23 (Bankr. M.D. Fla. 2011).

80. "Additionally the Court may impose monetary sanctions as a coercive measure to ensure the creditor's future compliance with the discharge injunction. Sanctions to coerce a creditor to cease violating the discharge injunction are an appropriate use of contempt sanctions." *In re McLean*, 2013 WL 5963358 at *4 (Bankr. M.D. Ala. 2013).

    **a. PNC Violated the Discharge Injunction**

81. PNC had knowledge of Plaintiff's bankruptcy and subsequent discharge through notices from the Bankruptcy Court. Moreover, PNC actively participated in Plaintiff's bankruptcy by filing its appearance and filing a Motion for Relief from the Automatic Stay, and thus its

knowledge of Plaintiff's bankruptcy and subsequent discharge cannot be disputed. *See* Exhibits C, D, E, G, H, and I.

82. Notwithstanding having actual notice of the discharge injunction, PNC caused to be entered a six figure judgment against Plaintiff with respect to a debt that was discharged in Plaintiff's bankruptcy.

83. Furthermore, PNC demanded that Plaintiff make payment on the discharged debt through its demand that Plaintiff obtain hazard insurance on the subject property.

### b.  PNC's conduct was perpetual, willful, and wanton

84. Despite having actual knowledge of the discharge injunction, PNC committed egregious violations of the discharge injunction by failing to cease collection efforts as demonstrated by the personal deficiency judgment entered against Plaintiff and the assertion that Plaintiff remains liable for insurance on a property in which it now owned.

85. Based on the broad language of the Bankruptcy Code, PNC willfully and shamelessly sought to collect a debt from Plaintiff in violation of the discharge injunction, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

86. Plaintiff is entitled to punitive damages for PNC's arrogant defiance of the Bankruptcy Code and the Bankruptcy Court's orders.

87. Furthermore, coercive actions are warranted here to encourage PNC to take a fresh look at its business practices to ensure future compliance with 11 U.S.C. §524.

WHEREFORE, Plaintiff, PAUL ALAN VELD, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Hold PNC in civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

b. Order PNC to pay Plaintiff for his actual damages as a result of the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

c. Order PNC to pay punitive damages in an amount this Honorable Court deems just and equitable for the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

d. Order PNC to pay Plaintiff his reasonable attorney's fees and expenses for violations of the Order of Discharge pursuant to 11 U.S.C.; §§524 and 105; and

e. Provide such other and further relief as this Honorable Court may deem just and proper.

**Plaintiff demands a trial by jury.**

Dated: May 13, 2016                      Respectfully Submitted,

/s/ Mohammed O. Badwan

/s/ Mohammed O. Badwan
Mohammed O. Badwan, Esq. ARDC#6299011
*Counsel for Plaintiff*
Sulaiman Law Group, LTD
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188