**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PAUL ALAN VELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16 cv 05219 |
| vs. | ) | |
| | ) | |
| PNC BANK, NATIONAL ASSOCIATION and | ) | Judge Amy J. St. Eve |
| ANSELMO LINDBERG OLIVER LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PNC BANK'S ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES**

PNC Bank, National Association ("PNC"), through its attorneys Clark Hill PLC, for its Answer to Plaintiff's Complaint, states the following:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action seeking redress for Anselmo's violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, PNC's violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq., and for PNC's violations of the Bankruptcy Discharge Injunction pursuant to 11 U.S.C. §§524, 105.

**ANSWER:** This paragraph reflects Plaintiff's characterization of the action, to which no response is required.  To the extent a response is required, PNC denies as untrue that it engaged in any wrongdoing or is otherwise liable to Plaintiff.

**JURISDICTION AND VENUE**

2.      Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

1

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants' conduct harmed Plaintiff in this District.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required.

4.      The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required.

## PARTIES

5.      Plaintiff, Paul Alan Veld, is a consumer and natural person over 18 years of age who owned real property located at 1031 Country Court, Crete, Illinois 60417 ("subject property").

**ANSWER:** PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

6.      Defendant Anselmo is an Illinois law firm with its principal place of business located at 1771 West Diehl Road, Naperville, Illinois 60563.

**ANSWER:** PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

7.      Defendant PNC is a banking subsidiary of PNC Financial Services Group with its principal place of business in Pittsburgh, Pennsylvania. PNC is a foreign corporation in the business of issuing and servicing loans across the country, including in the State of Illinois.

**ANSWER:** PNC admits only that it is a subsidiary of PNC Financial Services Group, Inc., with its principal place of business in Pittsburgh, Pennsylvania and is in the business of issuing and servicing loans in the U.S. and the State of Illinois.

## BANKRUPTCY CASE

8.      On or about July 31, 2003, Plaintiff executed a mortgage and note ("subject loan") in favor of National City Bank secured by the subject property.

**ANSWER:** PNC admits Plaintiff executed a mortgage and note dated July 31, 2003, but denies that this was the loan foreclosed by Will County Case No. 15-CH-1894 and therefore, cannot be the "subject loan."[1] Further answering, the note and mortgage that are the true subject of this action are dated May 24, 2012.

9.      On or about May 1, 2012, PNC began servicing the subject loan

**ANSWER:** PNC denies the allegation as untrue.

10.      Plaintiff defaulted on the subject loan in March 2014.

**ANSWER:** Admitted.

11.      On April 30, 2014, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 14-16514 ("bankruptcy"). *See* Exhibit A, a true and correct copy of the Notice of Bankruptcy Case Filing.

**ANSWER:** PNC admits only that Exhibit A to Plaintiff's Complaint purports to be a Notice of Bankruptcy case filing. With respect to the remainder of the allegation, PNC lacks knowledge or information sufficient to form a belief, which has the effect of a denial.

---

[1] The property located at 1031 Country Court, Crete, Illinois 60417 was security for two loans.  The loan at issue in this case is dated May 24, 2012 and the loan erroneously identified by Plaintiff is dated July 31, 2003.

12.     Schedule D of the bankruptcy petition listed the subject loan, a secured pre-petition debt to PNC, secured by the subject property. *See* Exhibit B, a true and correct copy of Schedule D filed in Plaintiffs bankruptcy case.

**ANSWER:** PNC admits only that Exhibit B of Plaintiff's complaint purports to be "Schedule D" of a bankruptcy petition and lists PNC Bank, N.A. as creditor of a second mortgage and PNC Mortgage as creditor of a first mortgage. With respect to the remainder of the allegation, PNC lacks knowledge or information sufficient to form a belief, which has the effect of a denial.

13.     On May 1, 2014, Plaintiff filed a Chapter 13 Plan which treated PNC's claim(s) as follows:

"Debtor is surrendering the real property located at 1031 Country Court, Crete, Illinois to PNC Mortgage and PNC Bank, NA in full satisfaction of their claims."

*See* Exhibit C, a true and correct copy of Plaintiff's Chapter 13 Plan.

**ANSWER:** PNC admits only that Exhibit C of Plaintiff's complaint purports to be a Chapter 13 Plan and contains the quoted language. With respect to the remainder of the allegation, PNC lacks knowledge or information sufficient to form a belief, which has the effect of a denial.

14.     On May 3, 2014, PNC was served with Plaintiff's Chapter 13 Plan by the Bankruptcy Noticing Center ("BNC"). *Id.*

**ANSWER:** PNC admits only that Exhibit C of Plaintiff's complaint contains a purported certificate of notice dated May 3, 2014 which contains PNC's name and address. With respect to the remainder of the allegation, at this time, PNC lacks knowledge or information sufficient to form a belief, which has the effect of a denial.

15.     Also on May 3, 2014, because PNC was listed as a creditor, the BNC served PNC with Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines. *See* Exhibit D, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing upon PNC.

**ANSWER:** PNC admits only that Exhibit D of Plaintiff's complaint purports to be a Certificate of Notice and PNC's name appears on the same. With respect to the remainder of the allegation, PNC lacks knowledge or information sufficient to form a belief, which has the effect of a denial.

16.     On May 28, 2014, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative from PNC appeared at the 341 Meeting of Creditors.

**ANSWER:** At this time, PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

17.     On May 28, 2014, Plaintiff filed a Modified Chapter 13 Plan which treated PNC's claim(s) as follows:

"Debtor is surrendering the real property located at 1031 Country Court, Crete, Illinois to PNC Mortgage and PNC Bank, NA in full satisfaction of their claims."

*See* Exhibit E, a true and correct copy of Plaintiff's Modified Chapter 13 Plan.

**ANSWER:** PNC admits only that a purported Modified Chapter 13 Plan is attached to Plaintiff's complaint as Exhibit E and the quoted language is contained therein. With respect to the remainder of the allegation, PNC lacks knowledge or information sufficient to form a belief, which has the effect of a denial.

18.     On May 30, 2014, PNC was served with Plaintiffs Modified Chapter 13 Plan by the BNC. *Id.*

**ANSWER:** PNC admits only that its name appears on a purported Certificate of Notice attached to Plaintiff's Complaint as Exhibit E. With respect to the remainder of the allegation, at this time, PNC lacks knowledge or information sufficient to form a belief, which has the effect of a denial.

19.     On July 25, 2014, the Honorable Judge Bruce W. Black entered an Order Confirming Plaintiffs Modified Chapter 13 Plan in the bankruptcy case. *See* Exhibit F, a true and correct copy of the Order Confirming Plan.

**ANSWER:** PNC admits only that Exhibit F to Plaintiff's Complaint purports to be an Order Confirming Plan. With respect to the remainder of the allegation, PNC lacks knowledge or information sufficient to form a belief, which has the effect of a denial.

20.     On August 6, 2014, PNC, through its counsel, filed a Motion for Relief from the Automatic Stay and Co-Debtor Stay in Plaintiff's bankruptcy case in order to permit it to pursue its state law remedies against the property. *See* Exhibit G, a true and correct copy of the August 6, 2014 Motion.

**ANSWER:** PNC admits that it filed the Motion for Relief from the Automatic Stay and Co-Debtor Stay but denies that the motion relates to the loan foreclosed by PNC in Will County Case Number 15-CH-1894. PNC further admits Exhibit G attached to Plaintiff's complaint is a copy of the motion without exhibits.

21.     On August 22, 2014, the Honorable Judge William V. Altenberger entered an Order Granting Motion for Relief from the Automatic Stay and Co-Debtor Stay. *See* Exhibit H, a true and correct copy of the August 22, 2014 Order.

**ANSWER:** PNC admits only that Exhibit H to Plaintiff's Complaint purports to be an Order Granting Motion for Relief from the Automatic Stay and Co-Debtor Stay. With respect to

the remainder of the allegation, PNC lacks knowledge or information sufficient to form a belief, which has the effect of a denial.

22.     Plaintiff fully performed his duties as set forth in his confirmed Chapter 13 Plan.

**ANSWER:** PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

23.     On January 26, 2015, Plaintiff received a discharge of all dischargeable debts, including the subject loan. *See* Exhibit I, a true and correct copy of the Discharge Order along with the BNC Certificate of Notice establishing service upon PNC.

**ANSWER:** PNC admits only that Exhibit I of Plaintiff's Complaint purports to be a Discharge Order. With respect to the remainder of the allegation, PNC lacks knowledge or information sufficient to form a belief, which has the effect of a denial.

24.     The Discharge Order expressly stated:

"The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

**ANSWER:** PNC admits only that the document attached to Plaintiff's complaint as Exhibit I contains the quoted language.

25.     Pursuant to 11 U.S.C. §524, the entry of the Discharge Order invoked the protections of the discharge injunction, prohibiting any acts to collect upon the subject loan by PNC, Anselmo, or any other party.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, PNC admits.

7

## DEFENDANTS' POST-DISCHARGE COLLECTION ACTIVITY

26.    On September 4, 2015, PNC, through its attorney, Anselmo, filed a foreclosure proceeding against the subject property.

**ANSWER:** PNC admits only that it filed a foreclosure proceeding in relation to the subject property but denies as untrue any implication that PNC engaged in an unlawful activity.

27.    On January 15, 2016, PNC, through Anselmo, obtained a judgment of foreclosure against the subject property.

**ANSWER:** PNC admits that on January 15, 2016, PNC obtained a judgment of foreclosure on its mortgage interest in the property, by way of a mortgage dated May 24, 2012.

28.    On March 17, 2016, the subject property was sold at foreclosure sale.

**ANSWER:** Admitted.

29.    On April 14, 2016, PNC, through Anselmo, filed a Motion for Order Approving Report of Sale and Distribution and for Order of Possession. In its Motion, PNC sought a personal deficiency judgment against Plaintiff in the amount of $146,573.46. *See* Exhibit J, a true and correct copy of a portion of the April 14, 2016 Motion.

**ANSWER:** PNC admits only that it filed a Motion for Order Approving Report of Sale and Distribution and for Order of Possession on April 14, 2016. PNC denies the remainder of the allegation as untrue.

30.    The Motion stated "[t]his law firm [Anselmo] is deemed to be a debt collector." *Id.*

**ANSWER:** PNC admits only that the motion contains the quoted language.

31.    On April 22, 2016, the Court entered an Order Approving Report of Sale and Distribution ("Order"). *See* Exhibit K, a true and correct copy of the Order.

8

**ANSWER:** PNC admits only that the order attached as Exhibit K to Plaintiff's Complaint was entered by the Court on April 22, 2016. Further answering, PNC denies that it caused this order to be entered.

32.     The Order stated: "[d]eficiency of $146,573.46 is entered as a *personal* judgment against Paul Alan Veld, DO." *Id.* (emphasis added).

**ANSWER:** PNC admits the quoted language is contained in Exhibit K.

33.     On April 29, 2016, after the subject property was sold at the foreclosure sale, PNC sent Plaintiff a notice attempting to induce Plaintiff to obtain insurance on the subject property, while Plaintiff was no longer the record owner of the subject property. *See* Exhibit L, a true and correct copy of the April 29, 2016 notice PNC sent to Plaintiff.

**ANSWER:** PNC admits only that Exhibit L purports to be a letter from PNC sent to Plaintiff dated April 29, 2016. PNC denies the remainder of the allegation as untrue.

34.     The PNC notice stated:

"[t]his is your second and final notice to obtain insurance .......................... *[y]ou must reimburse PNC Mortgage for insurance premiums for any period during which the insurance we buy is in effect but you do not have insurance." Id.* (emphasis added).

**ANSWER:** PNC admits that Exhibit L of Plaintiff's complaint contains the language quoted but denies any implication that it violated the bankruptcy injunction or engaged in any unlawful activity.

## DAMAGES

35.     As a result of Defendants' conduct, a judgment in the amount of $146,573.46 was entered against Plaintiff.

**ANSWER:** PNC denies the allegation as untrue.

36. The entry of the six figure judgment against Plaintiff has caused Plaintiff significant emotional distress and mental anguish as he was led to believe that his bankruptcy had no legal effect.

**ANSWER:** PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

37. Plaintiff has been denied the benefits of a fresh start contemplated by the Bankruptcy Code.

**ANSWER:** PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

38. Concerned about the violations of his rights and protections afforded by virtue of his Chapter 13 bankruptcy discharge, Plaintiff sought the assistance of counsel to ensure that Defendants' unlawful collection efforts ceased.

**ANSWER:** PNC denies as untrue that it engaged in unlawful collection efforts or any other wrongdoing. With respect to the remainder of the allegation, PNC lacks knowledge or information sufficient to form a belief, which has the effect of a denial.

39. Plaintiff has expended time and expenses consulting with his attorneys as a result of Defendants' deceptive and unlawful collection actions.

**ANSWER:** PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

## COUNT I- ANSELMO'S VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

40. Plaintiff restates and realleges paragraphs 1 through 39 as though fully set forth herein.

**ANSWER:** PNC restates and realleges its responses to paragraphs 1 - 39 as though fully set forth herein.

41.     The Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, PNC admits.

42.     The subject loan is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction for personal, family, or household purposes.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, PNC admits.

43.     Anselmo is a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephone to collect delinquent consumer accounts.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. Furthermore, PNC is not required to respond to this allegation since it is not directed to PNC. To the extent a response is required, PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

44.     Anselmo is also a "debt collector" because its collection activities commenced after the subject loan was in default. 15 U.S.C. §1692a(6).

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. Furthermore, PNC is not required to respond to this allegation since it is not directed to PNC. To the extent a response is required, PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

45.     Anselmo violated 15 U.S.C. §§1692 e, e(2), e(10), f, and f(1), through its debt collection efforts.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. Furthermore, PNC is not required to respond to this allegation as it is not directed to PNC. To the extent a response is required, PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

### a.     Violations of FDCPA §1692e

46.     Anselmo violated §1692e by seeking and obtaining a deficiency judgment against Plaintiff in an effort to deceive Plaintiff into believing he was liable for the deficiency that arose after the subject property was sold. Plaintiff's personal liability on the subject loan was extinguished by virtue of his bankruptcy discharge, and thus Plaintiff was not liable for the deficiency.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. Furthermore, PNC is not required to respond to this allegation as it is not directed to PNC. To the extent a response is required, PNC admits that Plaintiff did not have any personal liability on the subject loan but lacks knowledge or information sufficient to form a belief as to the remainder of the allegation.

47.     Anselmo violated §1692e(2) by falsely representing that Plaintiff was liable for the deficiency that arose after the subject property was sold. Plaintiff was not liable for the deficiency by virtue of his bankruptcy discharge.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. Furthermore, PNC is not required to respond to this allegation as it is not directed to PNC. To the

extent a response is required, PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

48.     Anselmo violated §1692e(10) by employing false representations and deceptive means in an attempt to collect a discharged debt. Plaintiffs bankruptcy discharge extinguished Plaintiff's liability on the subject loan, thus precluding any deficiency judgment being entered against him.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. Furthermore, PNC is not required to respond to this allegation as it is not directed to PNC. To the extent a response is required, PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

### b.     Violations of FDCPA §1692f

49.     Anselmo violated 15 U.S.C. §1692f by employing unfair and unconscionable means to collect the subject loan by attempting to induce Plaintiff into paying a debt that is not legally owed.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. Furthermore, PNC is not required to respond to this allegation as it is not directed to PNC. To the extent a response is required, PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

50.     Anselmo violated §1692f(1) by attempting to collect a debt not permitted by law as the discharge injunction prohibits any attempt to collect a personal deficiency from Plaintiff.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. Furthermore, PNC is not required to respond to this allegation as it is not directed to PNC.

51.     Upon information and belief, Anselmo has no system in place to identify and cease collection of discharged debts.

**ANSWER:** PNC is not required to respond to this allegation as it is not directed to PNC. To the extent a response is required, PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

52.     Upon information and belief, Anselmo regularly seeks and obtains deficiency judgments against consumers who have obtained bankruptcy discharges.

**ANSWER:** PNC is not required to respond to this allegation as it is not directed to PNC. To the extent a response is required, PNC lacks knowledge or information sufficient to form a belief as to the allegation, which has the effect of a denial.

## COUNT II - PNC's VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

53.     Plaintiff restates and realleges paragraphs 1 through 39 as though fully set forth herein.

**ANSWER:** PNC restates and realleges its responses to paragraphs 1-39 as though fully set forth herein.

54.     Plaintiff Paul Alan Veld is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/ (c) and (e) respectively.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, PNC admits Plaintiff is a person but denies he is a consumer under the Illinois Consumer Fraud and Deceptive Business Practices Act.

55.     PNC is engaged in commerce in the State of Illinois with regard to Plaintiff, the subject loan, and the subject property. PNC specializes in lending, servicing, and debt collection,

14

which are activities within the stream of commerce and utilized in their regular course of business.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, PNC admits only that it conducts lending and servicing activities in the State of Illinois.

56.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

**ANSWER:** PNC admits the statute cited exists and admits the statute contains the quoted language cited.

### a.     Deception and Unfairness

57.     PNC violated 815 ILCS 505/2 by engaging in unfair and deceptive acts or practices by using fraud, deception, and misrepresentations in its attempt to collect the subject loan after Plaintiff's bankruptcy discharge.

**ANSWER:** PNC denies the allegation as untrue.

58.     PNC's demand for payment through the personal deficiency judgment represents the use of false pretenses and deception to attempt to collect the subject loan, which was duly scheduled and discharged in Plaintiff's bankruptcy, because the subject loan was not owed at the time the personal deficiency judgment was entered against Plaintiff.

**ANSWER:** PNC denies the allegation as untrue.

15

59.     It was unfair and deceptive for PNC to seek to collect the subject loan from Plaintiff through the personal deficiency judgment and such conduct was designed to induce Plaintiff into making payments on a debt that is uncollectible and not owed as a matter of law.

**ANSWER:** PNC denies the allegation as untrue.

60.     It was also unfair and deceptive for PNC to assert that Plaintiff remained obligated to insure the subject property after the subject property was sold at a foreclosure sale and while Plaintiff was no longer the record owner of the subject property.

**ANSWER:** PNC denies the allegation as untrue.

61.     PNC intended that Plaintiff rely on its unfair and deceptive acts, and Plaintiff did in fact rely on PNC's deceptive and unfair acts to his detriment as he was led to believe that his bankruptcy had no legal effect.

**ANSWER:** PNC lacks knowledge or information sufficient to form a belief as to what Plaintiff believed, which has the effect of a denial. With respect to the remainder of the allegation, PNC denies the allegation as untrue.

62.     PNC's conduct in obtaining a six figure judgment on a debt discharged in bankruptcy is immoral and against public policy.

**ANSWER:** PNC denies the allegation as untrue.

63.     Upon information and belief, attempting to collect debts discharged in bankruptcy from Illinois consumers is an unfair and deceptive business practice willfully employed by PNC and is done on a mass scale.

**ANSWER:** This paragraph reflects a conclusion of law, to which no response is required. To the extent a response is required, PNC denies the allegation as untrue.

16

64.     As pled above, Plaintiff was substantially harmed by PNC's conduct.

**ANSWER:** PNC denies the allegation as untrue.

65.     An award of punitive damages is appropriate because PNC's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to PNC's unlawful collection attempt.

**ANSWER:** PNC denies the allegation as untrue.

### COUNT III – PNC'S VIOLATIONS OF THE DISCHARGE INJUNCTION

66.     Plaintiff restates and realleges paragraphs 1 through 39 as though fully set forth herein.

**ANSWER:** PNC restates and realleges its responses to paragraphs 1 - 39 as though fully set forth herein.

67.     "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007).

**ANSWER:** PNC admits the case law cited exists and admits the quoted language is contained therein.

68.     Pursuant to 11 U.S.C. §524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

**ANSWER:** PNC admits only the statute cited exists and denies the statute contains the quoted language cited in the allegation.

69.    "Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.,* 239 F.3d 910, 915 (7th Cir. 2001).

**ANSWER:** PNC admits the case law cited exists but denies the case contains the quoted language cited in the allegation.

70.    A court has not only the inherent authority to enforce its orders, but also the statutory authority, under 11 U.S.C. §105(a), to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. This authority includes the issuance of sanctions as necessary, and encompasses both the court's authority to enforce orders and, also, necessarily includes orders imposing sanctions for violating the discharge injunction. *In re Adams, 2010* Bankr. LEXIS 22017, *11 (Bankr. E.D. N.C. 2010).

**ANSWER:** PNC admits the case law cited exists but denies the remainder of the allegation since only the bankruptcy court has the inherent authority to enforce its orders.

71.    "The automatic stay and discharge injunction are cornerstones of bankruptcy law. They are, respectively, a fundamental debtor protection and a fundamental debtor objective. The automatic stay assists debtors in regaining their financial footing by allowing them to do so free from collection efforts. And, having successfully completed the bankruptcy process, discharge provides debtors with a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. But the automatic stay and discharge injunction must be enforced to provide any meaningful protection or incentive." *In re Curtis,* 322 B.R. 470, 483 (Bankr. D. Mass. 2005).

**ANSWER:** PNC admits the case law cited exists and admits that the quoted language is contained therein.

18

72.     "If the court finds that the creditor received notice of the discharge in bankruptcy, then the debtor will have to prove only that the creditor intended the actions which violated the injunction." *Faust v. Texaco Ref and Mktg, Inc.,* 270 B.R. 310, 315 (Bankr. M.D. Ga. 1998).

**ANSWER:** PNC admits the case law cited exists and admits that the quoted language is contained therein.

73.     In determining if punitive damages are appropriate, the court has looked to (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; (4) any provocation by the debtor; as well as (5) the creditor's sophistication and knowledge of bankruptcy law and procedure. *In re Sumpter,* 171 B.R. 835, 845 (Bankr. N.D. 111.1994).

**ANSWER:** PNC admits the case law cited exists but denies the case stands for the proposition stated.

74.     Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so. *In re Wagner,* 74 B.R. 898, 903-904 (Bankr. E.D. Pa. 1987).

**ANSWER:** PNC admits the case law cited exists and admits the case stands for the proposition alleged. PNC denies any implication that Plaintiff is entitled to punitive damages.

75.     Punitive damages may be awarded for violations of the bankruptcy discharge, and are especially appropriate when a party acts in "clear disregard and disrespect of the bankruptcy laws." *In re Vazquez,* 221 B.R. 222, 231 (Bankr.N.D.I11.1998). Punitive damages of four to ten

times the amount of compensatory damages may be appropriate for willful violations of the bankruptcy injunction. *Id.*

**ANSWER:** PNC admits the case law cited and admits the case stands for the propositions alleged. PNC denies any implication that Plaintiff is entitled to punitive damages.

76. Furthermore, "[c]orporations can be liable for punitive damages because of acts of their agents if the corporation authorized the doing and the manner of the act of its agent." *Id.* at 230.

**ANSWER:** PNC admits the case cited contains the quoted language. PNC denies any implication that Plaintiff is entitled to punitive damages.

77. Punitive damages are especially appropriate when a party has acted in "arrogant defiance" of the Bankruptcy Code. *In re Medlin,* 201 B.R. 188, 194 (Bankr. E.D. Tenn. 1996).

**ANSWER:** PNC admits the case law cited exists but denies its applicability to the instant matter.

78. "For violations of the discharge injunction, courts have awarded punitive damages `where there exists a complete and utter disrespect for the bankruptcy laws.'" *In re Phillips,* 2012 Bankr. LEXIS, *10 (Bankr. N.D. Ohio 2012).

**ANSWER:** PNC denies the case law, as cited, exists and therefore denies the quoted language cited in the allegation.

79. "In assessing punitive damages it has been reasoned that 'sophisticated commercial enterprises have a clear obligation to adjust their programming and procedures and their instruction to employees to handle complex matters correctly.'" *In re Wallace,* 2011 Bankr. LEXIS 1168, *23 (Bankr. M.D. Fla. 2011).

**ANSWER:** PNC admits the case law cited exists and admits the quoted language contained therein.

80.     "Additionally the Court may impose monetary sanctions as a coercive measure to ensure the creditor's future compliance with the discharge injunction. Sanctions to coerce a creditor to cease violating the discharge injunction are an appropriate use of contempt sanctions." *In re McLean,* 2013 WL 5963358 at *4 (Bankr. M.D. Ala. 2013).

**ANSWER:** PNC admits the case law cited exists and admits the quoted language contained therein.

### a.     PNC Violated the Discharge Injunction

81.     PNC had knowledge of Plaintiff's bankruptcy and subsequent discharge through notices from the Bankruptcy Court. Moreover, PNC actively participated in Plaintiff's bankruptcy by filing its appearance and filing a Motion for Relief from the Automatic Stay, and thus its knowledge of Plaintiff's bankruptcy and subsequent discharge cannot be disputed. *See* Exhibits C, D, E, G, H, and I.

**ANSWER:** PNC admits only that it had knowledge of Plaintiff's bankruptcy and subsequent discharge.

82.     Notwithstanding having actual notice of the discharge injunction, PNC caused to be entered a six figure judgment against Plaintiff with respect to a debt that was discharged in Plaintiff's bankruptcy.

**ANSWER:** PNC denies the allegation as untrue.

83.     Furthermore, PNC demanded that Plaintiff make payment on the discharged debt through its demand that Plaintiff obtain hazard insurance on the subject property.

**ANSWER:** PNC denies the allegation as untrue. Further answering, PNC denies demanding payment from Plaintiff.

### b. PNC's conduct was perpetual, willful, and wanton

84. Despite having actual knowledge of the discharge injunction, PNC committed egregious violations of the discharge injunction by failing to cease collection efforts as demonstrated by the personal deficiency judgment entered against Plaintiff and the assertion that Plaintiff remains liable for insurance on a property in which it now owned.

**ANSWER:** PNC denies the allegation as untrue.

85. Based on the broad language of the Bankruptcy Code, PNC willfully and shamelessly sought to collect a debt from Plaintiff in violation of the discharge injunction, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

**ANSWER:** PNC denies the allegation as untrue.

86. Plaintiff is entitled to punitive damages for PNC's arrogant defiance of the Bankruptcy Code and the Bankruptcy Court's orders.

**ANSWER:** PNC denies the allegation as untrue.

87. Furthermore, coercive actions are warranted here to encourage PNC to take a fresh look at its business practices to ensure future compliance with 11 U.S.C. §524.

**ANSWER:** PNC denies the allegation as untrue.

### PNC'S NOTICE OF AFFIRMATIVE AND OTHER DEFENSES

Defendant, PNC Bank, National Association, by its attorneys Clark Hill PLC, for its Affirmative Defenses to Plaintiff's Complaint, states as follows:

1. Plaintiff's Complaint fails since PNC nor its agents caused the personal deficiency to be entered against Plaintiff.

2.      The Court lacks subject matter jurisdiction over Plaintiff's claim for violation of the bankruptcy discharge, as only the bankruptcy court may administer relief for the alleged violation.

3.      Plaintiff's claims are barred by the equitable doctrines of laches, waiver, or estoppel.

4.      Plaintiff's claims are barred because he did not suffer any actual damages. 815 ILCS 505/10b.

5.      PNC reserves the right to amend and/or supplement this notice of affirmative and other defenses.


Respectfully submitted,
PNC BANK, NATIONAL ASSOCIATION.


By:   ___/s/ Mohammed Lakhani_____


Mohammed Lakhani (#6309502)
CLARK HILL PLC
150 N. Michigan Avenue, Suite 2700
Chicago, IL  60601
T: (312) 985-5900
mlakhani@clarkhill.com